BERT FRENCH, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 420–R. Promulgated August 29, 1949.

*George Bouchard, Esq.,* for the petitioner.
*John F. Wolf, Esq.,* for the respondent.

278

OPINION.

LeMire, *Judge*: Petitioner contends that respondent erred in its determination that he was a contractor or subcontractor during 1943 within the meaning of section 403 (a) (5) of the Renegotiation Act, which provides in part that the term "subcontract" means:

(B) Any contract or arrangement * * * (i) any amount payable under which is contingent upon the procurement of a contract or contracts with a Department or of a subcontract or subcontracts, or determined with reference to the amount of such a contract or subcontract or such contracts or subcontracts, or (ii) under which any part of the services performed or to be performed consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts * * *.

Respondent contends that petitioner was a subcontractor within the meaning of the Renegotiation Act in 1943 because his compensation was received on the basis of sales to the Navy by his principals on orders which petitioner solicited or procured.

The intent of the Renegotiation Act was to allow the Government to recover excessive profits and fees earned by manufacturers' agents as contractors or subcontractors on contracts to supply commodities

to the Government for war end use.[2]  Section 403 (a) (5) (B) applies to manufacturers' agents or representatives whose compensation is contingent upon the amount of contract business they procure for their principals or whose contracts of employment provide that any part of their services consists of procuring or attempting to procure contracts with departments of the Government.  It does not apply to manufacturers' agents whose compensation is fixed by the amount of business procured by their principals if under their contracts the compensation is not contingent upon the agents' procurement or attempted procurement of business for their principals.  *George M. Wolff*, 8 T. C. 146; *Leon Fine*, 9 T. C. 600.

The petitioner here admittedly was employed as a sales representative by his principals.  His contractual relationship was substantially the same with all of his principals.  His contracts provided for no duties other than selling and for no basis of compensation other than sales.  He was employed to locate Navy business for his principals and to help them to secure contracts for that business.  He represented his principals' interests in their dealings with the Navy by utilizing his considerable experience in buying procedure and the numerous "contacts" he had developed among Navy procurement and purchasing officers to stimulate interest and demand for his principals' products and to secure promises from naval personnel to order those products under open purchase contracts held by his principals.

The fact that petitioner's compensation was not contingent upon the amount of Navy business he personally secured for his principals and that he was paid commissions on all gross sales to the Navy in his territory, whether he actually made the sales or not, is not controlling of our question here.  Section 403 (a) (5) (B) (ii) is applicable to "Any contract  *  *  *  under which *any part* of the services performed *or to be performed* consists of the soliciting, attempting to procure, or procuring a contract or contracts with a Department or a subcontract or subcontracts." (Italics supplied.)  Thus, we think that the petitioner was a subcontractor, within both the letter and the spirit of the law.

Petitioner relies heavily on the case of *Leon Fine, supra,* for the principle that a manufacturers' agent is not a subcontractor within the meaning of section 403 (a) (5) (B) of the Renegotiation Act merely because his compensation was based upon the amount of contracts or subcontracts procured by his principal if the compensation was not contingent upon the amount of contracts *procured by him* for his principal.  The *Fine* case is readily distinguishable from this case, however, since Fine was employed as a service representative for his

---

[2] See discussion of legislative history of section 403 (a) (5) (B) of the Renegotiation Act in *George M. Wolff*, 8 T. C. 146, at pages 150, 151.  See also remarks of Mr. Vinson of Georgia in the Congressional Record for April 20, 1943, at page 3687 (edition of the daily printing of the Record).

principal, and not as a salesman. His contract provided that he should perform field services from time to time designated to him in connection with the performance of his principal's contracts and that he should be paid commissions computed or based upon the amounts collected by his principal on all specific projects and orders referred to him for field work. There was no contract for compensation for services to be performed as a salesman.

In this case the petitioner undoubtedly rendered services of value to the Navy and to his principals by supervising the packing and shipping of goods to be delivered to the Navy, arranging delivery schedules, and otherwise promoting expeditious and satisfactory relations between his principals and the Navy Supply Department. However, his contracts were for locating and procuring Navy business for his principals, with the understanding that he would render these additional services.

Since petitioner was a subcontractor within the meaning of section 403 (a) (5) (B), all of his compensation based on gross sales to the Navy Supply Department by his principals is renegotiable. It is necessary to point out, however, that the business which the petitioner solicited from the Ships' Service Department of the Navy is not subject to renegotiation, since it does not involve funds appropriated by Congress. *W. Tip Davis Co.*, 12 T. C. 335.

The petitioner has failed to produce any evidence that the determination by the War Contracts Price Adjustment Board of the amount of excessive profits received by him in 1943 was erroneous. We therefore find that petitioner's renegotiable profits from commissions received from his principals on sales to the Supply Department of the Navy during 1943 were excessive in the amount of $29,910, as determined by the War Contracts Price Adjustment Board.

*An order will issue in accordance herewith.*