C. H. TRACE, PETITIONER, *v.* UNITED STATES OF AMERICA, RESPONDENT.

Docket Nos. 406–R, 547–R, 748–R. Filed December 16, 1955.

*C. H. Trace, pro se.*
*Harlan F. Leathers, Esq.,* for the respondent.

540

OPINION.

ATKINS, *Judge:* The petitioner was a manufacturer's representative whose compensation consisted of commissions on sales of his principals' products. As such, any excessive fees earned on sales of commodities to the Government for war-end use are recoverable under the Renegotiation Act. *French* v. *War Contracts Price Adjustment Board,* 13 T. C. 276,

The War Contracts Price Adjustment Board has determined that the petitioner's profits, which consisted of commissions on renegotiable sales, were excessive in the amounts of $65,000 for the year 1943 and $10,000 for each of the years 1944 and 1945. The amounts of commissions realized by the petitioner for those years, subject to renegotiation, were at least $184,835 for 1943, $96,217 for 1944, and $58,546 for 1945.

The petitioner's primary contention as raised by the pleadings was that the Adjustment Board erred in failing to reduce the amounts of his commissions by the amounts that he paid to his brother, Claude J. Trace, his theory being that Claude was a co-owner of the business and was entitled to one-half the profits. However, on briefs no mention is made of this contention, leading us to believe that he no longer relies upon that ground. In any event, the record does not establish that the petitioner and Claude were co-owners of the business or that Claude was in any way entitled to one-half the commissions. The contract between the petitioner and Claude is not in evidence, nor does the testimony show the precise arrangement between them. Upon the record, we hold that the petitioner has not sustained his burden of showing error on the part of the Board in holding that all the commissions were, in the first instance, income of the petitioner.

The alternative contention, and the one which the petitioner urges on brief, is that the Board erred in not allowing as deductions the amounts paid to his brothers, Claude and Keith, for personal services rendered.

The Renegotiation Act provides that items estimated to be allowable under chapter 1 (the income tax sections) of the Internal Revenue Code shall "be allowed as items of cost" under renegotiable contracts. The same section of the Renegotiation Act further provides that no item of cost shall be charged to renegotiable contracts "to the extent that in the opinion of the [Price Adjustment] Board or, upon redetermination, in the opinion of The Tax Court of the United States, such item is unreasonable * * *." Sec. 403 (a) (4) (B), Renegotiation Act of 1943.

Salaries, of course, are allowable deductions under the income tax section of the Internal Revenue Code in determining net income, and, by the cited provision of the Renegotiation Act, are allowed as part of the cost of performing renegotiable contracts. The Internal Revenue Code provision as to salaries is to permit the deduction from gross income of "a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *." Sec. 23 (a) (1) (A), I. R. C. 1939. This provision of the Code as to "reasonable compensation" and the further provision of the Renegotiation Act requiring the disallowance of any item deter-

mined to be "unreasonable" make it clear that the establishment of the reasonableness of any amount claimed on account of a salary payment is an essential element to its allowance. The demonstration of reasonableness is a part of the petitioner's burden of proof to show error with respect to the determination of the Adjustment Board. *Nathan Cohen* v. *Secretary of War*, 7 T. C. 1002.

As to the salary allowable for Claude J. Trace, the petitioner relies heavily on provisions of income tax regulations and court decisions to the effect that, generally, contingent compensation paid under a contract made before the services are rendered should be allowed as a deduction even though in the working out of the contract the amount may be greater than the amount which would ordinarily be paid. Sec. 29.23 (a)–6, Regs. 111; *Draper & Co.*, 5 T. C. 822; *William S. Gray & Co.* v. *United States*, (Ct. Cl.) 35 F. 2d 968. However, the cited regulations go further than the general statement referred to, and point out that "in any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances." In the cases cited by the petitioner, which allow deductions for contingent compensation, the evidence detailed the services that were rendered and the allowances were made in the light of that evidence. For example, in the *William S. Gray* case, *supra*, the Court of Claims made detailed findings of fact as to the duties of and services performed by each of the employees of the taxpayer whose compensation was questioned by the Commissioner of Internal Revenue.

The petitioner also refers to that part of the above regulations which provides that in judging salary allowances the circumstances to be taken into consideration are those existing at the date the contract for services was made, not those existing at the time the contract is questioned. On this point he cites *Robert Rogers, Inc.* v. *United States*, 93 F. Supp. 1014. In the cited case of *Rogers, Inc.*, the question concerned the reasonableness of a salary paid under a contingent contract entered into prior to the taxable year. The court in that case found on the evidence that at the time the salary arrangement was agreed upon "it appeared to be a reasonable one."

The petitioner's meager evidence fails to meet the tests prescribed by the regulations he cites, and fails to show that the amount paid to Claude for 1943 constituted reasonable compensation. We are not informed in any detail as to what services were expected of Claude or what services he performed; we do not know the extent of his responsibility for bringing to fruition the deals on which he worked with the petitioner; and there is no evidence of how his compensation compared with others performing similar services in like businesses.

Although the evidence lacks the details that the petitioner might normally be expected to show as to services rendered by Claude, the record as a whole affords support for allowing some compensation to Claude, which should be taken into consideration in determining the amount of excessive profits realized in the year 1943. There is evidence that he did render services that were valuable to the petitioner in producing the commissions that constituted the renegotiable profits. To refuse to make any allowance for the value of Claude's services distorts the amount of such profits. Considering all of the facts and circumstances that the record contains concerning Claude's services, we have concluded that the amount of $10,000 represents reasonable compensation therefor. See *L. Schepp Co.*, 25 B. T. A. 419, 429. That amount is an allowable item of the cost in determining the extent to which the petitioner's profits were excessive for the year 1943.

The petitions filed assign error in the Adjustment Board's disallowance of part of the salary claimed on behalf of Claude for the years 1944 and 1945. It appears that the Board did make an allowance for a salary to Claude in each of those years. For the same reasons that we have set out in regard to the year 1943, we cannot say, on the record before us, that the Board erred in not allowing larger amounts.

As to Keith B. Trace, there is evidence that he also performed services that were valuable to the petitioner in 1943 in producing the renegotiable profits; that petitioner claimed $47,000 as an allowable cost item for such services, and the Adjustment Board allowed $30,000. Here again, the petitioner's evidence is quite general and fails to give details that he no doubt was in a position to produce. On the record, we cannot find that the Adjustment Board erred in not allowing a larger amount for Keith's services.

Although the petitioner adduced evidence as to the activities of George F. Boos, he does not urge any specific error in the Adjustment Board's allowance in regard to payments to Boos. Upon the record, we find no error by the Adjustment Board in this respect.

There was no error in the refusal of the Adjustment Board to make an allowance for compensation in lieu of salary for the petitioner. Where income is due to personal efforts, the profits realized measure the value of the services, and no separate allowance for salary is to be made. *Greaves* v. *War Contracts Price Adjustment Board*, 10 T. C. 886.

It follows from what we have said, and it is our conclusion, that for the year 1943, the petitioner's profits from renegotiable business were excessive to the extent of $55,000 instead of $65,000, as determined by the Adjustment Board. We find no error in the Board's determinations for the years 1944 and 1945.

*Orders will be entered in accordance herewith.*